FILED IN CHAMBERS
U.S.D.C. Atlanta

JUL 2 6 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADVANCED TELEMEDIA, L.L.C.,

       Plaintiff,

   v.

CHARTER COMMUNICATIONS, INC,

       Defendant.

CIVIL ACTION

NO. 1:05-CV-2662-RLV

O R D E R

This is a breach of contract action in which the plaintiff Advanced Telemedia, L.L.C.'s ("ATM") also asserts a number of state law causes of action. This matter comes before the court on Charter Communications, Inc.'s ("Charter") motion to file First Amended Answer and Counterclaim [Doc. No. 49] and ATM's motion for an extension of time to its expert witness on damages [Doc. No. 58].

## I. Factual Background

In 1998 and 2000, ATM and Charter entered into five written agreements ("Agreements"). These Agreements dealt with the provision of Charter's cable television service at five metropolitan Atlanta apartment complexes, which include the Berkeley Landing Apartments, Riverbend Apartments, Cumberland Glen Apartments, Wexford Hills Apartments, and Lincoln Trace Apartments (collectively known as "the Properties").

ATM alleges that in 1998 and 2000 it assigned to Charter its

license right to provide ancillary services, such as digital cable, premium programming, pay-per-view, and high speed internet to residents of the Properties.  However, ATM alleges that it retained the exclusive right to provide basic cable services to the residents.  According to ATM, ATM paid Charter a monthly service charge per unit in exchange for Charter's obligation to allow ATM to continue as the exclusive provider of basic cable service at the Properties.  ATM alleges that during the pendency of its Agreements with Charter that Charter consistently provided basic cable services to the residents of the Properties in violation of ATM's rights under the Agreements.[1]  ATM alleges that it incurred damages as the result of Charter's breach of its Agreements with ATM.

In a prior order dated May 15, 2006, the court denied in part and granted in part the ATM's motion to compel [Doc. No. 64].  Specifically, the court directed Charter to produce the customer invoices for the period between October 2002 and January 2003 for

---

[1] On October 14, 2005, ATM filed its complaint.  On January 9, 2006, the parties filed a stipulation wherein the parties agreed that ATM would be allowed to file an Amended Complaint [Doc. No. 16].  On January 27, 2006, ATM filed its First Amended Complaint [Doc. No. 19].  The First Amended Complaint includes eight enumerated Counts.  Specifically, ATM alleges that Charter (1) engaged in unauthorized reception of cable service in violation of 47 U.S.C. § 553(A)(1); (2) engaged in unauthorized publication or use of communications in violation of 47 U.S.C. § 605; (3) breached its contractual Agreements with ATM; (4) committed fraud; (5) engaged in conversion; (6) tortiously interfered with ATM's prospective business relations; and (7) unjustly enriched itself.  Lastly in Count Eight, ATM seeks reimbursement for the expenses incurred in bringing this suit.

the Properties in question that were on CD-ROM.  However, the court decided that it was needlessly burdensome for Charter to produce the invoices prior to September 2002 which were only on microfiche.  Now, ATM seeks additional time to disclose its expert on damages, while Charter seeks to amend its answer to add new defenses [Doc. Nos. 49 and 58].  The court will address these motions in turn.

## II. Legal Analysis

### A. ATM's Motion for an Extension of Time to Disclose its Expert on Damages

On May 10, 2006, ATM filed a motion asking the court to extend the time for it to disclose the identity of its expert witness on damages.  ATM argues that Charter did not produce a searchable list of its subscribers for the relevant time period.  Rather according to ATM, Charter produced in "separate PDF files approximately 20,000+ individual bills that Charter sent to subscribers at ATM Properties each month from February 2003 to the date of termination of the relevant contracts."  ATM states, "[T]he creation of a searchable database from 20,000+ invoices has proved to be quite cumbersome."  ATM further states that after a "searchable list of Charter subscribers is created from Charter's records, the cross-reference to determine ATM's damages will be fairly straightforward."  Alternatively, ATM states that if the cross-reference ultimately cannot be done, it will have to identify an expert to support another methodology to compute damages.

Charter argues that Local Rule 26.2(C) requires ATM to designate an expert early in the discovery period. Charter argues that ATM filed its motion to extend the time to disclose its expert witness with only one business day remaining in the discovery period. Furthermore, Charter states, "Local Rule 26.2 prohibits ATM from designating an expert witness 'unless expressly authorized by court order upon a showing that the failure to comply (with the rule) was justified.'"

In determining whether to grant ATM's motion, the court looks to Local Rule 26.2(C), which states,

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

> Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

It is undisputed that ATM did not reveal its expert on damages early in the discovery period. Therefore, the court must determine whether ATM's failure to comply with Local Rule 26.2(C) is justified.

ATM argues that granting its motion would not cause prejudice or delay, whereas denying it would cause ATM substantial hardship. In response, Charter argues, "ATM has had months to analyze the

4

Invoices but chose to wait until the very end of the extended discovery period to petition the Court for another extension. This is not a justification for ATM's failure to comply with Local Rule 26.2(C)."

Having considered ATM's motion, the court concludes that ATM has proffered sufficient justification, i.e., the difficulty in searching through more than 20,000 invoices, for its failure to disclose its expert witness on damages earlier in the discovery process. In reaching this conclusion, the court also considered a number of other relevant factors.

First, Local Rule 26.2(C)'s main concern is to prevent parties from engaging in trial by ambush and surprise by failing to reveal their expert witnesses. A plain reading of Rule 26.2(C) reflects that the Local Rule seeks to enable the parties the opportunity to discover and depose opposing expert witnesses during the discovery process. This is usually best accomplished if the parties disclose witnesses early in discovery. However, Local Rule 26.2(C) also gives the court a window of opportunity to divert from the typical schedule, if the party seeking a diversion provides a sufficient justification for its failure to comply with the Local Rule. Having reviewed ATM's motion, the court is satisfied that it has proffered a sufficient justification for its failure to comply with Local Rule 26.2(C).

In its motion, ATM proposes:

ATM moves the Court to extend the time for ATM to disclose its expert an additional 45 days following entry of this Court's Order according to the following time table: ATM's deadline for disclosing its expert shall occur fifteen days after the Court enters its Order on this motion; Charter then shall have fifteen days to depose the expert and identify a rebuttal witness, if any; and ATM would then have fifteen days to depose that witness.

The court concludes that this proposal is fair and reasonable. Additionally, ATM's proposal addresses the main concern of Local Rule 26.2(C), i.e., the ability of a party to depose an opposing expert witness and provide its own rebuttal witness if necessary. Moreover, disclosure of an expert witness dealing exclusively with damages will not delay the adjudication of this matter on the merits and will not interfere with the court's examination of the issue of liability, which is currently before the court on the parties' motions for summary judgment.

Finally, the court is cognizant that ATM filed the present motion to extend the time to disclose its expert witness on damages on May 10, 2006, prior to this court's issuance of an order of May 15, 2006, dealing with ATM's previously filed motion to compel the production of invoices in Charter's possession. Discovery in this matter was also set to conclude on May 15, 2006. The court finds it understandable that ATM would be uncertain as to how to proceed with discovery into the issue of damages without the court's direction on its motion to compel. Therefore, the court finds

6

ATM's proffered explanation for its noncompliance with Local Rule 26.2(C), i.e., the difficulty in searching the material produced by Charter, is sufficient to justify a diversion from the Local Rule. Therefore, ATM's motion for an extension of time to reveal its expert witness is GRANTED [Doc. No. 58].[2]

## B. Charter's Motion to Amend Answer

Next, the court must examine whether it should grant Charter's motion to amend its Answer to add new defenses.  On April 24, 2006, Charter filed a motion to amend its Answer to add several new defenses.  Specifically, Charter argues:

> In discovery, Defendant has learned that Plaintiff has completely failed to mitigate its damages and that its claims are subject to defenses available to Defendant pursuant to O.C.G.A. § 10-1-390 et seq., the Georgia Fair Business Practices Acts.  Defendant also contends the defenses of unclean hands and statute of limitations apply to the case.

Charter argues that the amendment of its Answer was not done earlier because "the instant case is extremely complex and involves many thousands of documents created over a five plus (5+) year relationship between the parties."  Charter argues that the standard articulated by Federal Rule of Civil Procedure Rule 15(a) governs its motion.

---

[2] In granting ATM's motion, the court intends for this extension of discovery to be the final extension barring unforeseen circumstances.  ATM must select and disclose an expert on damages within 15 days of the date this order is docketed.  Failure to comply with this requirement will result in ATM's expert being excluded.

In response, ATM argues that Charter's motion should not be granted because the scheduling order in this case cannot be modified unless Charter demonstrates good cause for failing to comply with the order.  Citing to Federal Rules of Civil Procedure Rule 16(b), ATM argues that Charter has not shown good cause for its proposed amended Answer as required by the Rule. Alternatively, ATM argues that even if Rule 15(a) governs Charter's proposed Amended Answer the court would be compelled to reach the same result.  Specifically, ATM argues that Charter has unduly delayed filing its motion to amend its Answer, that granting its motion to amend its Answer will cause undue prejudice to ATM, and that the proposed defenses are without merit and, therefore, futile.  In reaching a decision on Charter's motion, the court looked to Rule 15(a)[3] and 16(b).[4]  However, because Charter moved to amend after the deadline in the scheduling order, Rule 16(b),

---

[3] Rule 15(a) states:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

[4] The pertinent portion of Rule 16(b) states:

A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge.

8

which requires a showing of good cause to modify a scheduling order, is controlling. According to Rule 16(b), district courts are required to "enter a scheduling order that limits the time to . . . join other parties and to amend the pleadings. . . ." According to Rule 16(b), a scheduling order may be modified only upon a showing of good cause.

Pursuant to the Joint Preliminary Report and Discovery Schedule, all amendments to pleadings were due on December 31, 2005. On January 16, 2006, the parties stipulated that ATM would be allowed to file an Amended Compliant [Doc. No. 16]. On February 7, 2006, Charter filed its Answer to ATM's Amended Complaint [Doc. No. 21]. However, an agreement was not reached on Charter's ability to file a First Amended Answer to ATM's Amended Complaint. Charter filed its motion to amend its Amended Answer on April 24, 2006, nearly four months after the court-imposed deadline.

In <u>Sosa v. Airprint Systems, Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998), the Eleventh Circuit stated:

> If Sosa's motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus, as well. However, because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider Rule 15(a). If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure (internal citations omitted).

On this point, ATM argues:

Charter has provided no justification for the Court to
deviate from the scheduling order in this case.  A review
of Charter's motion demonstrates that it lacks any
factual support whatsoever, and, indeed, it appears that
the proposed defenses could have been raised either in
the original or amended answer.

The court agrees.  The only reason proffered for Charter's
amendment of its Answer is that "the instant case is extremely
complex and involves many thousands of documents created over a
five plus (5+) year relationship between the parties."  However,
the court is unpersuaded by Charter's proffered excuse.  If the
complexity of a case and/or the volume of discovery in a given case
constituted good cause to divert from a scheduling order, then the
scheduling order in any case could be amended at will by the
parties.  Furthermore, if the court were to adopt Charter's
reasoning, the court would have to read the good cause standard out
of Rule 16(b) and adopt 15(a)'s more liberal standard.  However,
the Eleventh Circuit in Sosa clearly warned against such a
practice.

ATM also cites to Sosa for the proposition that a total lack
of diligence is a ground for denying Charter's motion to amend its
Answer.  Again, the court agrees with ATM.  The defenses that
Charter is attempting to add, i.e., failure to mitigate, unclean
hands, statute of limitations, and O.C.G.A. § 10-1-390 et seq., are
defenses that it could have and should have been raised in its
initial Answer or its first Answer to ATM's Amended Complaint.

10

Alternatively, Charter could have moved to amend its Amended Answer at a much earlier stage in the litigation.  Instead, Charter opted to wait until nearly the close of discovery to raise some relatively basic defenses to a contract suit without providing the court with good cause for its failure to comply with the Joint Preliminary Report and Discovery Schedule.  Having reviewed Charter's motion, the court is satisfied that these defenses were omitted largely due to Charter's lack of diligence rather than through recent discovery which has uncovered the presence of these defenses.[5]

Having concluded that Charter has failed to meet its burden under Rule 16(b), the court need not reach whether such an amendment of Charter's Answer would have been permitted under the more liberal standard of Rule 15(a).  However even if the court were to apply the more liberal standard of Rule 15(a), the court would have reached the same result.

While Rule 15(a) declares that leave to amend "shall be freely given when justice so requires," leave to amend is not an automatic right. <u>Faser v. Sears Roebuck & Co.</u>, 674 F.2d 856, 860 (11th Cir.

---

[5] In its reply brief, Charter submitted the deposition testimony of ATM's President Gary Thomas Ream for the proposition that ATM did nothing to mitigate its damages.  Furthermore, Charter submitted a memo produced allegedly by ATM which "describes the damages as 'icing on the cake.'"  While this evidence potentially demonstrates that ATM might have failed to mitigate its damages, it does not provide a sufficient justification for Charter's failure to raise the defense of mitigation of damages at an earlier time.

1982).  A motion to amend may be denied on "numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." Carruthers v. BSA Adv., Inc., 357 F.3d 1213, 1218 (11th Cir. 2004).  Although delay itself is an insufficient ground to deny amendment under Rule 15(a), if the delay is "undue", the district court may refuse to permit amendment. Foman v. Davis, 371 U.S. 178 (1962).  In its reply brief, ATM argues, "[T]he court is empowered to deny leave to amend when the movant engages in undue delay."  ATM cites to Sawtell Partners, LLC v. Admiral Ins. Co., 2006 WL 839408 (N.D. Ga. 2006), and Somers v. Delta Air Lines, 1996 WL 741379 (N.D. Ga. 1996), to support this proposition.

In response, Charter argues that in Sawtell and Somers the plaintiffs were attempting to add new claims, not defenses, during the late stages of the case and after summary judgment motions had been filed.  Charter continues, "The movant's justification in failing to previously amend its pleadings only comes into play if the motion is made during the late stages of the proceedings."

However, the court disagrees with Charter's reasoning for several reasons. First, Charter's proposed Amended Answer has been filed relatively late in the discovery process, i.e., within a few weeks of the close of discovery.  Second and most importantly, Charter has failed to demonstrate that the information allegedly supporting the proposed defenses was unavailable to it at an

earlier stage in the litigation.[6]  Therefore, the court would have denied Charter's motion to amend its Answer, even if it had applied Rule 15(a).[7]

### III. Conclusion

For the above reasons, ATM's motion to extend the time for ATM to disclose its expert on damages is GRANTED [Doc. No. 58].  ATM is directed to disclose its expert on damages no later than 15 days after the date of the docketing of this order.  Thereafter, Charter shall have 15 days after ATM identifies its expert to depose ATM's expert and, if necessary, identify a rebuttal witness, and ATM shall then have fifteen days to depose Charter's expert.[8]

---

[6] Quite a bit of paper was spent by the parties discussing whether an amendment of Charter's Answer would be futile. Specifically, ATM argues that Charter does not have a defense pursuant to O.C.G.A. § 10-1-390, that the statute of limitations does not bar its claims, and that the defense of unclean hands is inapplicable.  Charter argues that each of these defenses has merit.  However, since the court has other grounds for denying Charter's motion to amend its Answer, it need not reach the issue of whether such defenses actually have any merit.

[7] ATM argues that granting Charter's motion will cause undue prejudice to ATM.  Specifically, ATM argues, "Allowing Charter to inject new issues into the case at this late stage would cause undue prejudice to ATM, which is currently preparing its motions for summary judgment on the claims and counterclaims."  The two cases cited by ATM, Carruthers v. BSA Advertising, Inc., 357 F.3d 1213, 1218 (11th Cir. 2004) and Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999), involved the denial of a motion to amend after the conclusion of discovery.  However, the facts of this case are distinguishable; therefore, the court did not give ATM's argument on this point significant weight.

[8] On March 13, 2006, the court entered a consent order extending discovery until May 15, 2006 [Doc. No. 36].  For the sole purpose of allowing Charter to comply with the directives of the

Charter's motion to amend its Answer is DENIED in its entirety [Doc. No. 49].

SO ORDERED, this **26th** day of July, 2006.

_Robert L. Vining, Jr._
ROBERT L. VINING, JR.
Senior United States District Judge

---

court's prior order dated May 15, 2005, the court extended discovery an additional 50 days.  This present order extends discovery for an additional and final 45 days solely to comply with this order.